# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ORANGEBURG DIVISION

| | |
|---|---|
| Corey Jawan Robinson, #294233, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 5:16-cv-01635-JMC |
| | ) |
| | ) **ORDER AND OPINION** |
| Officer/Sergeant Mr. Gilliard, | ) |
| Defendant. | ) |

This matter is now before the court upon the Report and Recommendation ("Report") (ECF No. 49) filed by United States Magistrate Judge Kaymani D. West on April 21, 2017. Plaintiff Corey Jawan Robinson ("Plaintiff"), a prisoner at Lieber Correctional Institution in the South Carolina Department of Corrections, proceeding *pro se,* filed this action pursuant to 42 U.S.C. § 1983 alleging "excessive force, assault and battery, and 8th and 14th Amendment violation[s]" against Defendant Officer/Sergeant Mr. Gilliard ("Defendant"). (ECF No. 1 at 4.) Plaintiff seeks $20,000.00 in actual damages for the injuries to his big toe and head. (*Id*. at 9.) On February 13, 2017, Defendant filed a Motion to Dismiss or in the alternative, Motion for Summary Judgment. (ECF No. 36.) The Report recommended that the court deny Defendant's Motion for Summary Judgment. This review considers Defendant's objection to the Magistrate Judge's Report (ECF No. 51) and Plaintiff's Response to Defendant's Objection to the Report and Recommendation. (ECF No. 54.) For the reasons set forth herein, the court **ACCEPTS** the Magistrate Judge's Report (ECF No. 49) and **DENIES** Defendant's Motion for Summary Judgment (ECF No. 36).

## I. LEGAL STANDARDS

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. "The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination." *Wallace v. Hous. Auth.*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citing *Matthews v. Weber*, 423 U.S. 261, 271 (1976)). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) that he is entitled to judgment as a matter of law. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of

evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## II. DISCUSSION

### A. Excessive Force Claim

Plaintiff contends that Defendant applied excessive force on him in violation of the Eighth and Fourteenth Amendment. 42 U.S.C. § 1983 provides a cause of action to individuals whose rights, privileges, or immunities under the Constitution and laws of the United States have been violated by a "person" under color of state law. The Supreme Court, construing § 1983 in conjunction with the Eleventh Amendment, has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII. To prove the use of excessive force in violation of the Eighth Amendment, Plaintiff is required to demonstrate that the prison official acted with a sufficiently culpable state of mind

3

(subjective component) and the injury inflicted was sufficiently serious (objective component). *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) "[T]he core judicial inquiry [for excessive force claims] is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). There are several relevant factors to consider in determining whether constitutionally excessive force was used. These include (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Iko,* 535 F.3d at 239.

Plaintiff states that Defendant violated his constitutional rights on November 14, 2014, when he escorted him "in full restraints and iron legs back to [his] cell from the holding cell . . . ." (ECF No. 1 at 4.) Plaintiff contends that he stopped to inform a maintenance staff that the glass in his cell window was cracked and his light had been out since he arrived in that cell. (*Id.* at 5.) Plaintiff alleges that Defendant "without warning grabb[ed] [him] and used excessive force on [him] by roughing [Plaintiff] up [and] his head hit the wall." (*Id.*) Plaintiff also alleges that Defendant "intentionally stepped down with all his force injuring [Plaintiff's] right big toe." (*Id.*) Plaintiff states that Defendant ignored the injury to Plaintiff's toe and tried to cover it up by not notifying medical personnel. (*Id.* at 7.) Furthermore, Plaintiff alleges that "it took forever for medical [personnel] to see [him]." (*Id.*) Finally, Plaintiff states that he was neither sanctioned nor did he attend any administrative hearings or receive any disciplinary action, which supports his claim that he did not violate any prison policy. (*Id.*)

Defendant objects to the Magistrate Judge's recommendation to deny his Motion for

Summary Judgment as to Plaintiff's excessive force claim. Defendant claims that "[Plaintiff] stopped while he was in the process of being escorted to his cell. As a result, any actions taken by Defendant were in a good faith effort to maintain or restore discipline and not maliciously and sadistically for the sole purpose to cause harm to Plaintiff." (ECF No. 51 at 2.) Defendant further contends that Plaintiff did not visit any prison medical staff until six (6) days following the alleged incident. Plaintiff did not complain about his head and that his right big toe healed and was not infected. *(Id.)*

As set forth in the Report, the Magistrate Judge applied the *Iko* factors to the facts of this case. Under the first factor, "the need for the application of force," the Magistrate Judge determined that there was no incident report either confirming or denying either party's contentions. Thus, she was unable to determine whether there was sufficient need for application of force under prong one of *Iko* factors based on Plaintiff's actions or inactions during his escort back to his cell on the day of the alleged incident. (ECF No. 49 at 6.) As to the second and third *Iko* factors "the relationship between the need and the amount of force that was used" and "the extent of any reasonably perceived threat that the application of force was intended to quell," the Magistrate Judge noted that the parties argued two different versions of the facts resulting in Defendant's alleged use of force. Furthermore, though Defendant indicates that excessive force was not used, Defendant failed to present any evidence, other than Plaintiff's medical history. (ECF No. 49 at 6.) There was also no undisputed evidence in the form of video evidence or otherwise. (*Id.*) Based on the evidence presented, the Magistrate Judge weighed the second *Iko* factor and determined that the amount of force that was used or the need for the force applied remains a disputed issue of fact. Additionally, the Magistrate Judge weighed the third *Iko* factor "the extent of any reasonably perceived threat that the application of force was intended to quell." The Magistrate

5

Judge determined that it was uncertain whether Plaintiff was a threat to Defendant or anyone else during the period his alleged incident occurred.

Next, the Magistrate Judge did not determine the fourth *Iko* factor — "any efforts made to temper the severity of a forceful response"— in favor of either party. Plaintiff claims that Defendant failed to notify medical staff of his injuries. (ECF No. 1 at 7); (ECF No. 43 at 2.) Plaintiff also alleges that though he received dressing changes, he did not receive any pain medication or injections immediately following the incident. (*Id.*) On November 20, 2014, Plaintiff's medical history showed Plaintiff visited medical services following the alleged November 14, 2014 incident. (ECF No. 36-2. at 2-3.) The medical records indicate that Plaintiff's right big toe was hurting and swollen and was wrapped in gauze. (*Id.*) However, Defendant asserts that the medical records provided no indication regarding how Plaintiff suffered his injury. (*Id.*) As the Magistrate Judge applied the *Iko* factors to these facts, the court agrees with the conclusion in the Report and Recommendation that genuine issues of material fact exist as to whether Defendant applied force in a good faith effort to impose order or maliciously and sadistically to cause harm. Thus, Defendant's objection to the Report with respect to Plaintiff's excessive force claim is **OVERRULED**.

B.  **Qualified Immunity**

Furthermore, Defendant objects to the conclusion in the Magistrate Judge's Report that he is not entitled to qualified immunity for Plaintiff's assault and battery claims pursuant to the South Carolina Tort Claims Act ("SCTCA"). Section 15-78-70(a) (1976, as amended) provides that "[t]his chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in

subsection (b)." However, an employee does not have immunity from suit "if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b).

Under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Cone v. Nettles*, 308 S.C. 109, 417 S.E.2d 523 (1992). "Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."" *Swagler v. Sheridan*, Civil Action No.: RDB-08-2289, 2011 WL 2746649 (D. Md. July 12, 2011) (citing *Iko*, 535 F.3d at 238.)) "To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct." *VanDerHorst v. Hoffer*, C/A No. 0:09-cv-0706-SB-PJG, 2010 WL 1009997, at *2 (D.S.C. Feb. 16, 2010) (citing *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)). "Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand." *Id.*

To determine whether those rights were clearly established at the time of the violation,

> "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful; but it is to say that in light of pre-existing law the unlawfulness must be apparent."

7

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The issue that the court must resolve is whether, at the time the events occurred, the law "gave the officials 'fair warning' that their conduct was unconstitutional." *See Howie v. Prince George's Cty.*, Civil Action No. DKC 2006-3465, 2009 WL 2426018, at *7 (D. Md. Aug. 5, 2009) (quoting *Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006)).

Defendant argues that he is entitled to qualified immunity as to Plaintiff's assault and battery claims because Plaintiff did not present sufficient evidence of any intent or actual malice. (ECF No. 51 at 23.) The Magistrate Judge determined that Plaintiff named Defendant in his individual capacity and has not sued any South Carolina state agency as a party to this lawsuit, and the SCTCA does not provide Defendant with immunity from this type of suit. In the event that Plaintiff can prove that Defendant acted with intent or actual malice, Defendant may be personally liable to Plaintiff. Additionally, if Plaintiff meets this burden of proving intent or actual malice, then Defendant would be acting outside his official capacity, and the SCTCA would not provide Defendant with immunity. As set forth above, the court agrees with the conclusion in the Report that Defendant is not entitled to qualified immunity. Plaintiff has established genuine issues of material fact as to his assault and battery claims. Thus, Defendant's objection to the Report is **OVERRULED.**

### III. CONCLUSION

Based on the aforementioned reasons and a thorough review of the Report and the record in this case, the court **ACCEPTS** the Report and Recommendation of the Magistrate Judge (ECF No. 49). It is therefore ordered that Defendant's Motion for Summary Judgment (ECF No. 36) is **DENIED**. The court further denies Defendant's Motion for Summary Judgment on the basis of qualified immunity.

**IT IS SO ORDERED.**

                                          J. Michelle Childs
                                          United States District Judge

August 24, 2017
Columbia, SC